UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| MATTHEW SCOTT BEASON, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) Case No. 08-2034 |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| **Defendant.** | ) |

# O R D E R

In July 2006, Administrative Law Judge (hereinafter "ALJ") Barbara Welsch denied Plaintiff Matthew Beason's application for disability insurance benefits and supplemental security income. The ALJ based her decision on findings that Plaintiff was able to perform his past relevant work and, alternatively, he can perform jobs that exist in significant numbers in the national economy.

In January 2008, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the ALJ's decision to deny social security benefits. In July 2008, Plaintiff filed a Motion for Summary Judgment (#11). In September 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#14). In October 2008, Plaintiff filed a Reply Memorandum in Response to Comissioner's [*sic*] Memorandum in Support of Its Motion for Summary Affirmance (#15). After reviewing the administrative record and the parties' memoranda, this Court **GRANTS** Plaintiff's Motion for Summary Judgment **(#11)**.

## I. Background
### A. Procedural Background

Plaintiff filed an application for social security benefits in March 2005, alleging that he became disabled in November 2004 due to severe depression and an unspecified back condition.

The Social Security Administration (hereinafter "SSA") denied Plaintiff's application initially and upon reconsideration. Plaintiff timely requested a hearing, which the ALJ held in May 2006. At the hearing, Plaintiff and vocational expert Bonnie Gladden testified. An attorney represented Plaintiff at the hearing. In July 2006, the ALJ denied Plaintiff's applications for benefits.

In January 2008, the Appeals Council denied Plaintiff's request for review of this decision, making the ALJ's decision the Commissioner's final decision. In January 2008, Plaintiff appealed this decision by filing a complaint with this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff seeks an outright reversal. In the alternative, he asks the Court to remand the case for reconsideration and to recommend that the Commission assign the case to a different ALJ.

### B.  Plaintiff's Background

Plaintiff last worked in November 2004, detailing cars. This job ended due to Plaintiff's back problems. Before that, he worked at Elder Beerman Department Store, first as a salesman and later as the manager of the men's department. He took an extended leave of absence after a car accident and his employer eventually told him that the store needed to hire someone else. Before that job, Plaintiff worked detailing cars. He lost that job when he entered treatment for drug and alcohol problems.

The record shows that Plaintiff received psychiatric treatment for suicidal behavior at Carle Pavilion in March 1994. (R. 257, 274, 158.)

More recently, in February 2005, Plaintiff broke up with his partner of nine years. Following this event, he attempted suicide and was hospitalized for three days. He subsequently began intensive treatment at Sarah Bush Lincoln Health Center and Coles County Mental Health

Center. He was again hospitalized in connection with suicidal behavior in May 2005, October 2005, and February 2006.

Plaintiff has been diagnosed with a variety of mental conditions, including depression, anxiety, post-traumatic stress disorder, and borderline personality disorder. He experienced sexual abuse as a child, and was raped several times. He has a history of polysubstance abuse disorder but he has been alcohol-free for about 13 years and has not done drugs since about December 2004.

His treatment includes one session each month with a psychiatrist, one private counseling session each week, and about eight group therapy sessions each week. He spends about 62 hours a month in treatment. (R. 301.) Dr. Dan Montgomery and Dr. John Lauer, both psychiatrists, have treated Plaintiff. Beginning in December 2005, Dr. Daphne Maurer has been his treating psychiatrist. Besides therapy and counseling, Plaintiff takes prescription medications, including Zoloft, Geodon, Ativan (Lorazepam), and Cogentin. (R. 314, listing his medications on April 17, 2006.) In May 2006, his regular medications included Zoloft, Benztropine, Lorazepam, Geodon, Tramadol, and Cyclobenzaprine. (R. 156.) His medications cause him to experience a number of side effects, including making his hands shake, feeling sleepy, feeling like he is bouncing off the walls. (R. 493-94.) The record indicates that his doctors have changed his medications several times because of side effects.

### C. The Hearing Before the ALJ

The ALJ held a hearing in March 2006, during which Plaintiff and vocational expert (hereinafter "VE") Bonnie Hunt testified.

At the hearing, Plaintiff testified that he cannot work because he has major depression reoccurring with dysthymia and post-traumatic stress disorder. He is scared when he is around people and experiences panic attacks and anxiety. He has trouble sleeping and has nightmares of past abuse and rape. He feels worthless and has a lot of shame and guilt. He has difficulty

concentrating and gets easily confused. He has suicidal thoughts and had tried to commit suicide four times during the year preceding the hearing. He also cuts himself.

### D. The ALJ's Decision

The SSA defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a-f). At each step, if the ALJ affirmatively finds the claimant disabled or not disabled, the inquiry ends, but if no determination can be made, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920(a)(4). If the claimant is currently employed or was previously employed during the relevant period, he is not disabled. 20 C.F.R. § 416.920(a)(4)(i). The second question is whether the claimant has a severe medical impairment that will last at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment, the inquiry ends. *Id.* However, if the claimant has a severe impairment, the third step is to ask whether the severe impairment meets or equals one listed in Appendix 1 to subpart P of part 404 of Chapter 20. 20 C.F.R. § 416.920(a)(4)(iii). If it does, the claimant is disabled. *Id.* If it does not, the fourth question is whether claimant is able to perform his past relevant work with his current impairment. 20 C.F.R. § 416.920(a)(4)(iv). If he can, then he is not disabled. *Id.* If he is not able to perform his past work, the fifth and final question is whether, with his current limitations, he can perform other work which exists in significant numbers in the national economy. 20 C.F.R. § 416.920(c)(1).

Here, the ALJ found that Plaintiff has severe impairments including degenerative disc disease of the back, depression, anxiety, post-traumatic stress disorder, and borderline personality disorder, but these impairments did not meet or equal any of the listed impairments. The ALJ determined that Plaintiff has the RFC to perform medium work that is routine and repetitive. Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff was able to perform his past relevant work as an automobile detailer and vehicle cleaner. In addition,

the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy, therefore, Plaintiff is not disabled as defined by the Social Security Act.

## II. Standard of Review

The ALJ's decision is subject to review pursuant to 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The United States Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. New York*, 305 U.S. 197 (1938)). Where conflicting evidence may allow reasonable minds to differ as to whether a claimant is disabled, the responsibility for making that determination rests with the ALJ. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996); *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). Therefore, the question for review is not whether the claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Id.* The Court defers to the ALJ's determinations of credibility, "so long as they find some support in the record." *Edwards v. Sullivan*, 985 F.2d 334, 338 (7th Cir. 1993).

## III. Discussion

Plaintiff argues that the ALJ erred by improperly assessing his credibility, improperly playing the role of doctor, and failing to give Dr. Maurer's opinion controlling weight. Consistent with these arguments, Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Plaintiff does not challenge the ALJ's Step 3 finding, therefore, he has waived it.

The Court appreciates Plaintiff's attorney's detailed citation references to the ALJ's decision.

The ALJ found that the medical evidence fails to support a finding that his back pain is as limiting as Plaintiff claims. As a result, the ALJ determined that Plaintiff could perform work at a medium exertional level. Plaintiff does not challenge this finding regarding his physical condition, therefore, he has waived it. The motion for summary judgment is based on his mental condition.

Plaintiff contends generally that the ALJ erred by failing to take into account the long-term record of his mental condition and treatment when assessing his condition. Instead, the ALJ stated that "the medical evidence fails to establish that the claimant's mental problems would prevent him from working. While the claimant has experienced periods of heightened symptoms, in particular with regards to his psychiatric hospitalizations, the evidence suggests that overall the medical and therapy have been helpful." (R. 30.) Plaintiff contends that the ALJ's analysis focuses on particular days when Plaintiff is feeling better and the fact that Plaintiff has good days does not provide evidence that he is able to work on a sustained basis.

Considering an application for social security benefits from a claimant with mental impairments, the Seventh Circuit court recently stated as follows:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job. E.g., *Watson v. Barnhart,* 288 F.3d 212, 217-18 (5th Cir. 2002); *Washington v. Shalala,* 37 F.3d 1437, 1442-43 (10th Cir. 1994).

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). This makes the ALJ's job difficult but it explains the care that an ALJ needs to take when considering the evidence in a case such as this one. *See Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984) (stating that an ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability). As in *Bauer*, it appears that the ALJ has overlooked this point.

Plaintiff also contends that the ALJ impermissibly played doctor when she questioned the validity of the diagnosis of post-traumatic stress disorder. (*See* R. 27.) In addition, the ALJ

6

apparently rejected the doctors' diagnoses altogether, stating that "although the claimant testified to significant problems with post-traumatic stress disorder as a result of multiple episodes of sexual abuse as a child . . . the mental health records suggest that the claimant's symptoms exacerbation is due primarily to his inability to come to terms with the end of his relationship with his boyfriend of nine years and unresolved issues from that relationship." (R. 28.) The Court agrees with Plaintiff that the ALJ's job is not to evaluate the validity of the doctors' diagnoses or the sufficiency of the cause and contributing factors of Plaintiff's mental illness.

Plaintiff also contends that the ALJ did not adequately discuss Plaintiff's medications, in violation of SSR 96-7p. The ALJ states that Dr. Maurer took Plaintiff off Cymbalta in March 2006 (R. 456), "but apparently did not replace it with anything or increase the dosage of any of the other psychotropic medications nor express an intention of adding a new medication in the near future. She prescribed Cogentin, but she specifically noted it was to address the possible akathisia." (R. 36.) The ALJ also noted that Plaintiff had been stable on Cymbalta (R. 451) and she indicated that the fact that Dr. Maurer did not prescribe any new medications to replace it suggested "that the medication was effective but not needed enough to overcome side effects." (R. 36.)

In fact, the ALJ's discussion of Plaintiff's medication (R. 36) contains factual errors. A medications list dated April 17, 2006, includes Zoloft, Geodon, Ativan (Lorazepam), and Cogentin. (R. 314.) Thus, after taking Plaintiff off Cymbalta, Dr. Maurer prescribed Zoloft, which is commonly used to treat major depression as well as obsessive-compulsive, panic, and social anxiety disorders (Physicians' Desk Reference 2587-88 (2007)). In May 2006, Plaintiff's regular medications included Zoloft, Geodon, and Lorazepam, as well as three additional medications: Benztropine, Tramadol, and Cyclobenzaprine. (R. 154, 156.) Benztropine is used to reduce side effects such as akathisia. Tramadol and Cyclobenzaprine are antidepressants. (*Id.* at 2145.) Thus, the ALJ was incorrect in stating that Dr. Maurer did not prescribe any additional medication to replace Cymbalta and therefore she erred by concluding that Plaintiff's condition was stable and he no longer needed a medication such as Cymbalta.

More importantly, Plaintiff contends that the ALJ erred when assessing Dr. Maurer's opinion. The Court agrees.

Dr. Maurer's letter dated April 17, 2006, listed diagnoses related to Plaintiff's mental condition including major depression recurrent with history of dysthymia, post-traumatic stress disorder, borderline personality disorder, with a history of polysubstance disorder in full sustained remission for 11 years. She stated, in pertinent part, as follows:

> Mr. Beason is currently being treated with psychotherapy (group and individual) as well as psychotropic medications. He is compliant with his medications and his follow up appointments. Currently, he continues to be depressed, and medication adjustments are ongoing. He does hear voices at times, and this is worse when he is depressed. He also displays symptoms consistent with borderline personality disorder including cutting on his arms. At this time, Mr. Beason's condition is poor, and he still at times has suicidal thoughts.
> . . . .
> Psychotropic medications are generally effective for the treatment of depression in most patients; however, Mr. Beason has a significant history of trauma in the form of physical and sexual abuse. He is undergoing psychotherapy for these issues, but he continues to suffer from nightmares and flashbacks regarding the abuse. Mr. Beason's future prognosis depends heavily upon his response to treatment in the form of both medications and counseling. Typically patients experiencing these types of psychiatric symptoms do poorly, especially when first starting counseling and exploring the abuse issues they have encountered. Given the severity of Mr. Beason's current symptoms as well as his history of trauma, I feel that his future prognosis with respect to his psychiatric condition is most likely poor.
>
> Mr. Beason cannot at this time maintain substantial, gainful employment. He would most likely have great difficulty in concentrating and completion of tasks, and his attendance rate would be unsatisfactory given the nature of his illness with exacerbation of symptoms in stressful situations. This is not likely to change any time in the near future.

(R. 313-14.)

The ALJ rejected Dr. Maurer's opinions for two reasons. First, the ALJ observed that the staff at Coles County Mental Health "put considerable time and effort into helping the claimant obtain disability benefits." (R. 34.) She stated that the "multiple references to the claimant's

outstanding bill and the claimant's recent disability denial and how he should proceed next at the same therapy session raises the possibility that the motivation of the staff at Coles County Mental Health was partially financial." (R. 35.)  The ALJ then imputes this same financial motive to Dr. Maurer, particularly noting that when Dr. Maurer wrote a letter to Plaintiff's lawyer describing Plaintiff's condition and prognosis, she "surely knew the intended purpose of her letter and that it would be potentially helpful in the claimant obtaining disability benefits and thereby allow him to pay for his mental health treatment." (R. 35.)  The ALJ's conclusion that Dr. Maurer's opinion is not believable because she was motivated by the desire for financial gain is not supported by evidence.  The claimant bears the burden of showing that he has a medically severe impairment or combination of impairments.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  This means that Plaintiff is responsible for providing medical and other evidence that the ALJ could use to reach conclusions about his condition.  20 C.F.R. § 416.912(a); *Bowen*, 482 U.S. at 146 n.5.  Because a claimant is required to provide evidence to support his case, he certainly cannot be faulted for asking the treating physician for a statement, nor can the physician be reasonably suspected of ulterior motives on the ground that she provided such a statement.  Furthermore, even if Plaintiff's counselor or the remaining staff at Coles County Mental Health was concerned about Plaintiff's ability to pay his bills, that alone does not provide a basis for imputing the same motive to Dr. Maurer.  Finally, any doctor will gain financially if a patient pays his bills.  To reject a physician's opinions on the basis that he or she may gain financially if the claimant succeeds in obtaining social security benefits and therefore might be better able to pay their medical bills would effectively eliminate a claimant's ability to establish his case.  In the absence of other evidence that Dr. Maurer had an ulterior motive for her opinions, the Court concludes that this suggestion does not constitute a basis for rejecting Dr. Maurer's opinions.

Second, the ALJ also contends that Dr. Maurer's opinions are not supported by the medical evidence.  In support of this statement, she said that all of Plaintiff's hospitalizations were due to his issues with his long-term relationship ending and "the claimant's level of subjective symptoms does not correspond to objective observation" (R. 35), citing an exhibit that describes observations made during Plaintiff's February 2006 hospitalization.  In addition, the

9

ALJ specifically discussed Dr. Maurer's statement that patients exploring issues of abuse typically do poorly and that considering the claimant's history and current symptoms, his prognosis was likely poor. The ALJ rejected this statement on the ground that, on March 13, 2006, Plaintiff reported to Dr. Maurer that his mood had been pretty good except for the side effects of Cymbalta, he denied suicidal ideation, he had not been cutting himself lately, and he had been sleeping pretty well. (R. 456.)

In the context of Plaintiff's mental health, all things are relative. Feeling better compared to feeling suicidal is hardly evidence of the dramatic improvement implied by the ALJ. Furthermore, even at this appointment, Dr. Maurer observed that Plaintiff's mood was anxious and his affect was congruent. Consistent with past medical records, her diagnoses included major depression recurrent with dysthymia, post-traumatic stress disorder, and borderline traits. Based on the history of Plaintiff's mental condition and treatment, the Court rejects the ALJ's conclusion that the clinic notes from March 13, 2006, provide a basis for discrediting Dr. Maurer's opinion.

The ALJ also stated that the March 13, 2006, treatment note indicates that Plaintiff is stable, implying that the treatment note contradicts Dr. Maurer's opinion for that reason. She then refers to the fact that Dr. Maurer took Plaintiff off Cymbalta, but "apparently did not replace it with anything or increase the dosage of any of the other psychotropic medications nor express an intention of adding a new medication in the near future." (R. 36.) As the Court noted above, this is factually incorrect.

Next, the ALJ stated that Dr. Maurer did not provide any objective evidence to support her opinion that the claimant would most likely have great difficulty in concentrating and completing tasks. (R. 36.) In support, the ALJ referred to her previous conclusion that Plaintiff had "at most moderate difficulties with concentration and task completion and there is no reason to believe he could not perform routine repetitive tasks." (R. 36.)

The Seventh Circuit court recently reiterated its position that an ALJ cannot simply limit a claimant to simple routine tasks to address the claimant's problems in the areas of concentration, persistence, and pace. *Stewart v. Astrue*, --- F.3d ---, 2009 WL 859830, *3 (7th Cir. 2009) (citing cases). Based on the court's express rejection of the contention that such a limitation is sufficient to account for difficulties in these areas, the Court concludes that the ALJ has not adequately addressed this issue.

The ALJ also stated that Dr. Maurer did not provide any objective evidence to support her opinion that Plaintiff's attendance rate would be unsatisfactory given the nature of his illness. In support, the ALJ relies on the fact that "there is no evidence that the claimant had any difficulty showing up for his mental health appointments or his eight group sessions a week." (R. 36.) Although the ALJ acknowledges the fact that showing up for his appointments is not equivalent to completing an eight-hour workday on a regular basis, she states that "one would expect that if exacerbations of the claimant's symptoms during stressful periods was [(sic)] going to cause absenteeism then evidence of attendance problems would appear in the mental health records as the claimant has experienced stressful incidents in the past year-and-a-half." (R. 36.) The ALJ based this conclusion on her reasoning that, because "the claimant is typically discussing these incidents with his therapist shortly after they occur, it does not appear that these stressful incidents cause any significant absenteeism problem." (R. 36.) The Court finds this reasoning unpersuasive.

In light of this discussion, the Court finds that the ALJ's reasons for rejecting Dr. Maurer's opinions are inadequate.

Plaintiff has asked the Court to remand for an award of benefits. The Court does not review whether a claimant is disabled, but whether substantial evidence in the record supports the ALJ's finding of no disability. *Walker*, 834 F.2d at 640. Under 42 U.S.C. § 405(g), the court has the authority to affirm, reverse, or modify a final decision of the Commissioner, with or without remand. 42 U.S.C. § 405(g), sentence 4. A judicial award of benefits is proper when all essential factual issues have been resolved and the record clearly establishes that the plaintiff is

entitled to benefits. *See, e.g., Campbell v. Shalala,* 988 F.2d 741, 744 (7th Cir. 1993). Remand for reconsideration by an ALJ is appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996). Based on the evidence in the record, the Court cannot conclude that the record clearly establishes that Plaintiff is entitled to benefits. Accordingly, the Court directs that the case be remanded for further consideration consistent with this order, including reconsideration of Dr. Maurer's opinions, as well as considering Plaintiff's condition in the context of his long-term treatment.

As a final matter, Plaintiff requests that a different ALJ be assigned to review this case on remand. Although the Court has no general power to order that a case decided by one administrative law judge be sent back to a different ALJ, this Court can recommend that a different ALJ review the case. *See Travis v. Sullivan,* 985 F.2d 919, 923-24 (7th Cir. 1993); *Sarchet v. Chater,* 78 F.3d 305 (7th Cir. 1996) (recommending a remand for consideration by a different ALJ because the "tone of the [ALJ's] opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim"). Based on the ALJ's focus on the trigger for Plaintiff's mental health condition rather than on the condition itself, and her unsubstantiated assertion regarding Dr. Maurer's motives, the Court recommends that a different ALJ review this case on remand.

### IV. Summary

For the reasons set forth above, this Court **GRANTS** Plaintiff's Motion for Summary Judgment **(#11)** and orders that the case be remanded, pursuant to sentence four of 42 U.S.C. § 405(g),[1] for further proceedings consistent with this Order. Remand pursuant to 42 U.S.C.

---

[1] Under 42 U.S.C. § 405(g), Sentence Four, "[t]he court shall have power to enter, upon pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a hearing."

§ 405(g), sentence four, will terminate the case. *Shalala v. Schaefer*, 509 U.S. 292, 299 (1993) (a sentence-four remand order terminates the case).

ENTER this 17th day of April, 2009.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE